IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        v.                                              14-CR-207

ERIC C. CUSIMANO,

                Defendant.

---

**GOVERNMENT'S RESPONSE TO THE**
**DEFENDANT'S SENTENCING MEMORANDUM**

**THE UNITED STATES OF AMERICA**, by and through its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this response in opposition to the defendant's sentencing memorandum (Dkt. #45).[1]

**PRELIMINARY STATEMENT**

On December 17, 2014, the defendant appeared before this Court and pled guilty to a two-count Information, which charged violations of Title 18, United States Code, Section 371 (conspiracy to commit securities fraud) and Title 26, United States Code, Section 7201 (tax evasion). The PSR, consistent with the government's calculation of the defendant's guideline sentence, determined that the defendant, with a total adjusted offense level of 27, a criminal history category of I, and a departure of 3 levels under §5K1.1 if granted by the

---

[1] This response only addresses the portion of the defendant's sentencing memorandum that was publically filed. The government disagrees with the defendant's position and request contained in the redacted portion of his sentencing memorandum. The government will address this issue orally at sentencing if requested by the Court.

Court, faces a guideline range of 51 to 63 months imprisonment. The plea agreement executed by the parties allowed the defendant to request a non-guideline sentence. On April 16, 2015, the defendant filed a sentencing memorandum moving this Court for a sentence below the advisory guideline range. This memorandum is submitted in opposition to defendant's request for a non-guideline sentence and in support of the government's contention that this Court should impose a guideline sentence of imprisonment.

## DISCUSSION

The United States recognizes that since *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines, but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). The United States contends that a sentence within the advisory guideline range is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. *See United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress .... It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider."). The sentencing court must also consider "the need to

avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A court that imposes a sentence outside the applicable advisory guidelines range must do so on notice to the parties and must state "with specificity" both at sentencing and in the written judgment and commitment order its reasons for doing so. 18 U.S.C. § 3553(c).

The defendant principally argues that a non-guideline sentence is warranted based on the relationship of the present case to that of *United States v. Donna Levy*, 11-CR-62, S.D.N.Y., and the overlapping nature of the sentencing enhancements in the present case. *See* Dkt. #45, pp. 3-5. However, based on a careful consideration of the facts from the *Levy* prosecution and the factual basis for the application of the sentencing enhancements here, the defendant's arguments are without merit.

**A.    THE DONNA LEVY PROSECUTION IS RELATED, BUT NOT EQUIVALENT TO THE DEFENDANT'S OFFENSE**

In his sentencing memo, the defendant argues that should the Court sentence the defendant to a guideline sentence of imprisonment, there would be a sentencing disparity to the related case of *United States v. Donna Levy*, 11-CR-62, S.D.N.Y. *See* Dkt. #45, pp. 3-4. This argument overstates the relationship between the *Levy* case and the instant prosecution. Although the government agrees that the *Levy* case is related, the present case involved many more stocks than were at issue in the *Levy* matter, and occurred over a much longer time period.

3

Donna Levy went to trial on a Fifth Superseding Indictment that was filed on June 28, 2012, and is attached hereto as **Exhibit 1**. Donna Levy was charged in count 1 of that indictment with a conspiracy to commit securities and wire fraud, and from a review of that count, the only stocks mentioned were CNWI and BANI. *See* Exhibit 1, Count 1 ¶¶ 1(h), 2(e), 7(c), and 7(d). Donna Levy was charged in counts 2 and 3 with substantive security fraud charges relating only to CNWI and BANI. *See* Exhibit 1, Counts 2 and 3. Finally, Donna Levy was also charged with an additional conspiracy to commit securities and wire fraud in count 6, which included the stock EWPI. *See* Exhibit 1, Count 6 ¶ 26(c). These three stocks, CNWI, BANI, and EWPI, were fraudulently touted by the defendant as part of the instant case, however, the defendant also touted 49 additional stocks. *See* Dkt. #29. Therefore, it is the government's position that although the *Levy* case is related to the present prosecution, the defendant's conduct involved the promotion of a large number of stocks unrelated to and not part of the offense conduct in the *Levy* case.

Additionally, the conduct of Donna Levy and the defendant are distinctly different. As outlined in the PSR and the government's response to the defendant's objections to the PSR, *see* Dkt. #47, the defendant set up a massive penny stock promotion business that was available to anyone looking seeking to engage in a fraudulent pump-and-dump. The defendant's actions in registering his company in Nevada, managing multiple websites, utilizing a website privacy service, and concealing assets, stands on their own, and were not related to Donna Levy. It was the defendant that hit the send button on the promotional e-mails he sent to investors, it was the defendant that engaged in selective touting to further manipulate the length and intensity of the pump-and-dump scheme, and it was the

defendant that fled to Panama and lived through a nominee, not Donna Levy. As such, the government urges the Court to reject the defendant's request to view the defendant as equally or less culpable than Donna Levy, and reject the defendant's request for a non-guideline sentence on this basis.

B.  APPLICATION OF THE SENTENCING ENHANCEMENTS DOES NOT RESULT IN OVERLAPPING THAT WARRANTS A DOWNWARD DEPARTURE

In the defendant's sentencing memorandum, he argues that the sentencing enhancements in the present case result in substantial overlapping, and as such, a downward departure is warranted. In particular, the defendant maintains that the 16 level increase under §2B1.1(b)(1)(I) based on the loss in the case overlaps with the 6 level increase under §2B1.1(b)(2)(C) relating to 250 or more victims; and that the victim enhancement overlaps with the 2 level increase under §2B1.1(b)(10)(C) for sophisticated means. *See* Dkt. #45, pp. 5; Dkt. #41, pp. 9-11. These arguments are without merit.

The Second Circuit has noted that "the cumulation of ... substantially overlapping enhancements, when imposed upon a defendant whose adjusted offense level translates to a high sentencing range, presents a circumstance that is present to a degree not adequately considered by the Commission and therefore permits a sentencing judge to make a downward departure." *United States v. Lauersen*, 348 F.3d 329, 344 (2d Cir. 2003) (citations omitted). In *Lauersen*, the Court discussed the application of two enhancements under an earlier version of the fraud sentencing guidelines. Although the Court easily noted that use of both enhancements was "not impermissible double-counting because the dollar-amount

enhancement of subsection 2F1.1(b)(1)(N) and the 'financial institution' enhancement of subsection 2F1.1(b)(8)(B) serve different purposes," *id.* at 343, the Court struggled with the overlap of the applications because "the large amount of money involved in the fraud significantly *triggers* both of them." *Id.* at 344 (emphasis added). Based on this overlap, the Court noted that during resentencing, the district court "may exercise discretion to mitigate the effect of the enhancement by making a downward departure." *Id.*

The government has been unable to find any case that supports the defendant's conclusion that in the circumstances of the present case, the loss enhancement and the victim enhancement from §2B1.1, or the victim enhancement and the sophisticated means enhancement from §2B1.1, substantially overlap to such a degree that a downward departure is warranted. Rather, the government has located several Second Circuit cases that have upheld a district court's determination that certain enhancements do not substantially overlap. *See United States v. Gabbidon*, 582 Fed.Appx. 53, 54 (2d Cir., Nov. 7, 2014); *United States v. Stitsky*, 536 Fed.Appx. 98, 114 (2d Cir., Oct. 17, 2013); *United States v. Abiodun*, 536 F.3d 162, 170 (2d Cir. 2008); and *United States v. Kilkenny*, 493 F.3d 122, 131 (2d Cir. 2007).

In the present case, the loss enhancement and the victim enhancement do not substantially overlap. Unlike *Lauersen*, there is not one common trigger for both of these enhancements. Here, the loss enhancement, which was calculated using the gain that resulted from the offense as an alternative measure of loss, was triggered based on the amount of money the defendant received for promoting the 52 penny stocks. It cannot be

said that the amount the defendant was paid for his promotional activities was also the trigger for the victim enhancement. Rather, the victim enhancement was applied based on the fact that the defendant was sending his newsletters to a large pool of investors, which for a period of time was over 100,000 investors. Similarly, the trigger for the sophisticated means enhancement and the victim enhancement were not one and the same. As already briefed by the government, the sophisticated means enhancement is properly applied based on a variety of factors, including the length and scope of the scheme, the concealment of the offense by the defendant, and the sophisticated practice of selective touting. Therefore, the government is opposed to the defendant's request for a downward departure based on a claim of overlapping sentencing enhancements.

## CONCLUSION

For the foregoing reasons, the defendant should be sentenced to a guideline sentence of incarceration.

DATED: Buffalo, New York, April 24, 2015.

Respectfully submitted,

WILLIAM J. HOCHUL, JR.
United States Attorney

BY: *S/ AARON J. MANGO*
_____
AARON J. MANGO
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5882
aaron.mango@usdoj.gov